24 C.C.P.A.(Patents)

## GENERAL MILLS, Inc., v. FREED.
### Patent Appeal No. 3754.

Court of Customs and Patent Appeals.
May 3, 1937.

Paul, Paul & Moore, of Minneapolis, Minn. (A. C. Paul and Oscar W. Giese, both of Minneapolis, Minn., and Edmund H. Parry, of Washington, D. C., of counsel), for appellant.

Myron B. Stevens, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing the notice of opposition of appellant and holding that appellee was entitled to the registration of the trade-mark "Sure-Dou," for use on "dextrinized and gelatinized starches for retaining moisture in all bakery products."

In his application appellee stated that he had used his trade-mark on his goods in interstate commerce since May 16, 1933.

In its notice of opposition appellant alleged: That it is the owner of flour and cereal mills, and elevator properties located in various places throughout the United States. That it is the owner of the entire capital stock of various subsidiary corporations in the United States. That it is the owner of several trade-marks used on the products manufactured in its mills, and sold in interstate and foreign commerce by and through its subsidiary corporations. That, long prior to appellee's alleged date of adoption and use of his mark, appellant and its predecessor—Sperry Flour Company, now a subsidiary corporation—adopted and used a number of trade-marks on poultry and stock foods, each of which consists of the prefix "Sure" followed by suffixes suggestive of the goods to which the marks were applied. That each of those marks was registered in the United States Patent Office under the Trade-Mark Act of February 20, 1905 (as amended [15 U.S.C.A. § 81 et seq.]): Registration No. 217,026, issued August 24, 1926, on an application filed April 13, 1926, for the trade-mark "Surefat" for use on poultry food; registration No. 128,524, issued January 6, 1920, on an application filed June 16, 1919, for the trade-mark "Suregrow" for use on poultry food; registration No. 128,523, issued January 6, 1920, on an application filed June 16, 1919, for the trade-mark "Surelay" for use on poultry food; registration No. 181,550, issued March 25, 1924, on an application filed October 23, 1923, for the trade-mark "Surelive" for use on baby chick food; registration No. 128,522, issued January 6, 1920, on an application filed June 16, 1919, for the trade-mark "Suremilk" for use on stock food; registration No. 153,622, issued March 21, 1922, on an application filed May 25, 1921, for the trade-mark "Surepork" for use on stock food; registration No. 275,841, issued September 30, 1930, on an application filed May 31, 1930, for the trade-mark "Sureturk" for use on poultry food; registration No. 275,839, issued September 30, 1930, on an application filed May 31, 1930, for the trade-mark "Suregobble" for use on poultry food; registration No. 275,833, issued September 30, 1930, on an application filed May 31, 1930, for the trade-mark "Surepoult" for use on poultry food; registration No. 302,765, issued April 25, 1933, on an application filed December 19, 1932, for the trade-mark "Surecalf" for use on stock food. That appellant and the Sperry Flour Company have expended large sums of money in advertising appellant's trade-marks, and have built up an extensive business in interstate commerce. That the public associates appellant's marks with its goods. That the goods on which appellee uses his trade-mark are of the same descriptive properties as those on which appellant uses its trade-marks. That the trade-mark of appellee so closely resembles the several trade-marks of appellant that if used on his goods, confusion in trade would result, and the public would be deceived into believing that appellee's goods originated with appellant. And that appellant would be

damaged by the registration of appellee's trade-mark.

Appellee filed a motion to dismiss the notice of opposition, alleging that the goods of the parties were not of the same descriptive properties, and that the marks were not confusingly similar.

The motion was denied by the Examiner of Interferences.

Thereupon, appellee filed an answer to the notice of opposition, and "particularly to the question of confusion in trade, which the Opposer alleges, might arise in the event of registration of Applicant's mark." Appellee further alleged in his answer that the goods on which he used his trade-mark "Sure-Dou" were not goods of the same descriptive properties as the goods on which appellant used its trade-mark, to wit, poultry and stock foods; that appellee's dextrinized and gelatinized starches are used by bakers for retaining moisture in all bakery products; that, whereas appellant's goods are usually distributed through wholesale and retail grocers, feed stores, and the like, appellee's goods are sold directly to bakers, and not through wholesale and retail grocers, and other concerns handling products for human consumption; that those engaged in making bakery products would not believe that appellee's product originated with appellant; and that appellee's use of his mark on treated starches would not be likely to confuse purchasers as to the origin of appellant's products. In his answer, appellee cited and quoted from several decisions, all but one of which—Chilton Printing Co. v. Class Journal Co., C.D.1912, 251, 182 O.G. 510—relate to the subject of "merchandise of the same descriptive properties," as used in section 5 of the Trade-Mark Act of February 20, 1905 (as amended [15 U.S.C.A. § 85]), in support of his "contention that confusion in trade could not arise in the event of registration of his trade-mark." Appellee quoted the following from the headnotes in the Chilton Case, supra: "Where an opposer used neither the mark sought to be registered by the applicant nor one so similar thereto as to be liable to cause confusion in the mind of the public, he has no standing in the opposition proceedings, (citing Underwood Typewriter Co. v. A. B. Dick Co., C.D.1911, 298, 163 O.G. 730, 36 App.D.C. 175.)"

On this record, the tribunals of the Patent Office held that appellee was entitled to the registration of his mark. In so holding, the Commissioner of Patents stated that, although appellee's mark "Sure-Dou" was "clearly *confusingly similar*" to appellant's mark "Suregrow," the goods of the respective parties did not possess the same descriptive properties, and therefore appellee was entitled to the registration of his mark. (Italics ours.) Accordingly, the notice of opposition was dismissed.

It is contended by counsel for appellant that appellee admitted in his answer that the products of the parties were derived from the same "raw material source," and that appellant's stock and poultry foods contain cereals and starch providing substances; that appellee also admitted that he was aware of the fact that appellant was engaged in the milling of flour which was sold to bakers; and that appellee failed to deny in his answer that his trade-mark so closely resembles the trade-marks of appellant "that the public will be confused and deceived into believing" that appellee's goods bearing his mark originated with appellant. It is further contended that the goods of the parties possess the same descriptive properties, and that the involved marks so closely resemble one another that the use by appellee of his mark on his goods concurrently with the use by appellant of its marks on its goods would be likely to cause confusion in the trade and result in injury to appellant.

It is conceded in the brief of counsel for appellee that appellee inadvertently failed to deny in his answer the allegation, contained in the notice of opposition, that his mark so closely resembled the marks of appellant as to cause confusion in the trade. It is argued by counsel, however, that the goods of the respective parties do not possess the same descriptive properties, and that confusion in trade will not result in the concurrent use by the parties of their respective marks on their goods.

At the outset, attention should be called to the fact that appellant, in paragraph 11 of its notice of opposition, declared that the goods of the respective parties possess the same descriptive properties, and that, in paragraph 12, it was alleged that the marks of the parties so closely resemble one another that, if used by them on their respective goods, "the public will be confused and deceived into believing" that appellee's goods originated with appellant.

We think it was the purpose of appellant to allege that the goods of the parties possess the same descriptive properties, and that, therefore, confusion in trade will re-

sult because of the similarity of the marks of the parties.

It is clear from the provisions of section 5 of the Trade-Mark Act of February 20, 1905 (as amended), that if the marks closely resemble one another, or even if they are identical, confusion in trade will not be likely to result in a statutory sense, unless the goods of the parties possess the same descriptive properties.

We think appellee's answer is sufficient to raise the question of the confusing similarity of the involved marks when used on the goods of the respective parties which, appellee alleged, did not possess the same descriptive properties.

Although the notice of opposition contains an allegation that appellant's marks are used on, or in connection with, flour and other cereal products of appellant, there is no statement therein as to when such marks were so used. (It will be noted that the registrations hereinbefore set forth, relate only to stock and poultry foods.)

Although appellee conceded in his answer that the goods of the respective parties were derived from the same raw material source, he qualified that concession by stating that appellant's stock and poultry foods, although containing cereals and starch, usually contain "other products that are supposed to be beneficial to the health and growth of live stock and poultry."

We are in agreement with the contention of counsel for appellant that appellee's trade-mark "Sure-Dou" closely resembles at least one of appellant's trade-marks "Suregrow." However, we are not in accord with their contention that the goods of the respective parties possess the same descriptive properties.

Appellee's "dextrinized and gelatinized starches," used by bakers for the purpose of retaining moisture in bakery products, are sold directly to the consumers—bakers, and not to wholesale or retail grocers; whereas, it is alleged in appellee's answer and not denied by appellant that appellant's goods are "usually distributed through wholesale and retail grocers, feed stores and the like."

It is true that appellant refers in its notice of opposition to its products as cereal products. However, there is nothing in the notice of opposition from which it may properly be deduced that other materials are not used in its poultry and stock foods, as alleged in appellee's answer.

We find nothing of record which tends to establish that the use by appellee of his mark on his goods, concurrently with the use by appellant of its marks on its goods, would be likely to cause confusion or mistake in the mind of those who purchase the goods of the respective parties.

Considering the differences in their description, character, and use, and the people to whom they are sold, we are of opinion that the goods of the respective parties do not possess the same descriptive properties.

Although appellee's mark "Sure-Dou" closely resembles appellant's mark "Suregrow," we are not in accord with the holding of the Commissioner of Patents that those marks are "confusingly similar," in view of the fact that the goods of the parties do not possess the same descriptive properties.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.